UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:10-CR-1-GFVT-2 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| CURTIS LEE JUSTICE, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court, on referral, considers reported violations of supervised release conditions by Defendant Curtis Lee Justice. On April 26, 2010, Defendant pled guilty to uttering counterfeit obligations or securities in violation of 18 U.S.C. § 472. (*See* D.E. 31). On September 9, 2010, District Judge VanTatenhove sentenced Defendant to a term of imprisonment of 12 months and 1 day, and a two-year term of supervised release. (*See* D.E. 58). Defendant began his supervised release term on June 24, 2011.

## I. BACKGROUND

On December 29, 2011, the United States Probation Office (USPO) issued a Supervised Release Violation Report, and secured a warrant from the District Judge. The Report alleges that on October 12, 2011, an instant testing device detected the presence of methamphetamine and cocaine in Defendant's urine. Subsequent laboratory testing confirmed the presence of amphetamines, methamphetamine, and benzoylecgonine (cocaine metabolite). Thus, the Report charges Defendant in Violation #1 with violating the condition of his release that proscribes the use of any controlled substance. The Report goes on to reason that by using methamphetamine and cocaine as alleged in Violation #1, Defendant possessed the controlled substances in

contravention of Kentucky law. Thus, Violation #2 charges Defendant with violating the condition of his release which states that "the defendant shall not commit another federal, state, or local crime."

Violation #3 again charges Defendant with violating the condition of his release that prohibits the commission of another federal, state, or local crime. This charge is based upon a December 19, 2011 incident involving the Kentucky State Police during which Defendant allegedly possessed pills of oxycodone with the intent to distribute them to Melissa Figley. According to the Report, Defendant was arrested on December 19, 2011 for this incident, but failed to report the encounter to his probation officer within 72 hours of his arrest as required by Standard Condition #11. The failure to report his arrest forms the basis for Violation #4.

Finally, Violation #5 charges that Defendant violated Standard Condition #3 which provides that "[t]he defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." According to the Report, Defendant lied to his probation officer about his whereabouts on December 23, 2011, and failed to report to the probation office as directed by his probation officer.

On January 11, 2012, the Court conducted an initial appearance pursuant to Rule 32.1, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. (D.E. 68). The Court conducted a final revocation hearing on January 17, 2012, at which Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. (D.E.69).

## II. DEFENDANT VIOLATED CONDITIONS OF RELEASE

At the final revocation hearing, the United States was required to prove "by a preponderance of the evidence that the defendant violated [the] condition[s] of [his] supervised

release." 18 U.S.C. § 3583(e)(3). The United States presented the testimony of United States Probation Officer Brian Rains and Kentucky State Police Detective Darren Allen. Defendant did not call any witnesses.

### A. Evidence Presented by the United States

Defendant's probation officer, Brian Rains, testified that on October 12, 2011, he made contact with Defendant at his place of employment and secured a urine specimen. He used an instant testing device on the specimen, which indicated that the specimen was positive for methamphetamine and cocaine. Defendant acknowledged that he had used methamphetamine, but did not account for the positive cocaine result. Subsequent laboratory testing confirmed that the specimen contained amphetamines, methamphetamine, and benzoylecgonine (cocaine metabolite).

Detective Allen also testified at the final revocation hearing. He stated that on December 19, 2011, he and Detective Edland Botkin were eating at a restaurant that was attached to a gas station. As they were exiting the restaurant, Detective Botkin noticed two cars parked at the gas pumps, but neither driver was pumping gas. He then observed Defendant exit one of the vehicles with an object in his hand, and walk over and enter the other vehicle being driven by Melissa Figley. Based upon these observations, Botkin believed that Defendant and Figley were engaged in a drug transaction. Both detectives approached Figley's vehicle—Botkin to the passenger door where Defendant was seated, and Allen to the driver's door where Figley was seated. When he looked inside the passenger door, Botkin observed pills and money on Defendant's lap. He then announced himself as the "State Police." As he did so, Defendant attempted to eat the pills.

Botkin opened the passenger door, removed Defendant from the vehicle, and ordered Defendant to "spit the pills out." Allen secured Defendant on the ground and handcuffed him while Botkin searched for the pills. One or two pills were discovered in the area inside the car where Defendant was seated. The detectives also found a canister containing 60 additional pills on the passenger side floorboard of Figley's car. Defendant acknowledged that the pills were Percocet, that he did not have a prescription for them, and that he was at the gas station to give the pills to Figley. He also told Detective Allen that he was going to provide the money that was found on his lap to Figley because she was "going through a tough time." Defendant was arrested on December 19 and charged with, among other things, trafficking in a controlled substance – first degree.

Officer Rains testified that, after his December 19 arrest, Defendant posted bond and was released from custody on December 20. However, Defendant did not personally advise Officer Rains of the arrest until Officer Rains initiated a telephone call to Defendant on December 23— more than 72 hours after the arrest occurred. During the telephone call, Officer Rains also asked Defendant to identify his location. Defendant initially stated that he had traveled to London and Barbourville with a friend. When Officer Rains instructed Defendant to report to the probation office in Lexington, Defendant stated that he was at a Best Buy in Pikeville. When Officer Rains stated that there is no Best Buy in Pikeville, Defendant again changed his story and stated that he was at Wal-Mart. Officer Rains then instructed Defendant to report to the probation office in Pikeville. He also provided Defendant with directions to the office. Soon thereafter, however, the call was disconnected, and Defendant never reported to the probation office.

## B. Findings

On October 12, 2011, Defendant admitted to his probation officer that he used methamphetamine. An instant testing device and subsequent laboratory testing confirmed that methamphetamine was present in Defendant's urine specimen. The tests also revealed the presence of cocaine and cocaine metabolite. Defendant did not present any evidence rebutting Officer Rains' testimony, or calling into question the results of the instant testing device or the laboratory tests. Accordingly, the Court finds by a preponderance of the evidence that Defendant used controlled substances—i.e., methamphetamine and cocaine—as alleged in Violation #1. By finding that Defendant used methamphetamine and cocaine, the Court is required to find that Defendant possessed those controlled substances. The Sixth Circuit has clearly and repeatedly equated drug use with drug possession, *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000), and Defendant's admitted use and the test results establish that Defendant possessed those controlled substances in contravention of Kentucky law as alleged in Violation #2, *see* KRS 218A.1415.

The Court also finds by a preponderance of the evidence that Defendant committed a violation of KRS 218A.1412 (trafficking in a controlled substance – first degree).[1] KRS 218A.1412 provides in relevant part:

> A person is guilty of trafficking in a controlled substance in the first degree when he or she knowingly and unlawfully traffics in . . . [a]ny quantity of [a controlled substance that is classified in Schedules I or II and is a narcotic drug, or a controlled substance analogue] . . . ."

---

[1] Unfortunately, at the Final Hearing, counsel for the United States was wholly unprepared to address the elements of this crime—risking a dismissal of this charged violation. The Court, however, was prepared to address the elements, but expects much better preparation on the part of the Government in the future.

KRS 218A.1412(1)(e) (internal quotation to KRS 218A.1412(1)(c)). KRS 218A.010, in turn, defines "traffic" to mean, among other things, "to . . . possess with intent to . . . distribute . . . a controlled substance." KRS 218A.010(47). Here, Defendant's own statement at the gas station to Detectives Allen and Botkin establishes that he possessed Percocet with the intent to deliver the Percocet to Melissa Figley. Percocet, generically known as oxycodone, is a Schedule II controlled substance and is a narcotic drug. Thus, the United States has established that Defendant committed Violation #3 as charged in the Violation Report. Likewise, the United States has established that Defendant committed Violation #4. Defendant's conduct at the gas station on December 19, 2011, led to his arrest. But according to Officer Rains' testimony, Defendant did not report his arrest to his probation officer until Officer Rains initiated contact with Defendant on December 23, 2011, more than 72 hours after the arrest. Although Defendant may have been unable to contact his probation officer while he was in custody, Defendant was released on bond the next day and had more than an ample opportunity to contact Officer Rains within the 72-hour window established by Standard Condition #11 of the conditions of his supervised release.

Finally, the Court finds by a preponderance of the evidence that Defendant committed Violation #5. Defendant presented no evidence to contradict Officer Rains' testimony regarding the run-around that Defendant gave to Officer Rains during the December 23, 2011 telephone call. Defendant could not be in two places at once. Thus, Defendant was either being untruthful when he told Officer Rains that he was in London/Barbourville, at Best Buy in Pikeville, or at Wal-Mart in Pikeville. He also failed to report to the probation office as directed by Officer Rains.

### III. REVOCATION AND SENTENCE

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was convicted of a Class C felony, and the maximum revocation sentence provided under § 3583(e)(3) for such a conviction is imprisonment for two years. The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violations proven. *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438-39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1, Defendant's conduct would qualify as Grade C violations with respect to Violations #1, #4, and #5, a Grade B violation with respect to Violation #2, and a Grade A violation with respect to Violation #3. Given Defendant's criminal history category of IV (the category at the time of the underlying conviction in this District) and a Grade A violation, see U.S.S.G. § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."), Defendant's Guidelines range, under the Revocation Table of Chapter 7, is 24 to 30 months. However, in light of the two year statutory cap on the maximum term of imprisonment, Defendant's Guidelines range is effectively 24 months.

In a case of this nature, Congress *mandates* revocation. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (equating use with possession); *United States v. Metcalf*, 292 F. App'x

447, 450 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Defendant did not rely upon this exception. Therefore, based upon the Court's findings, revocation is mandatory in this case.

The Court has considered all of the § 3553 factors imported into the § 3583(e) analysis, and finds that revocation of Defendant's term of supervised release is warranted. In particular, the Court has carefully weighed the nature and circumstances of the offense and Defendant's particular history and characteristics, and has considered the need for the sentence imposed to afford adequate deterrence to criminal conduct. Furthermore, the Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant has indeed breached the Court's trust here.

The Court is required to impose a sentence that is sufficient, but not greater than necessary, to address this breach of trust and the other statutory goals imported into § 3583(e). As noted above, the Court is concerned with the breach of trust that has occurred, and also the dangers that are associated with the distribution and use of controlled substances, such as

oxycodone, methamphetamine, and cocaine.  Under these circumstances, a term of imprisonment at the Guidelines range of 24 months is appropriate as no sufficient reason was given to depart downward.  Therefore, it is the recommendation of the undersigned that Defendant be sentenced to 24 months of imprisonment.

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation.  *See* 18 U.S.C. § 3583(b) & (h).  The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release."  *See* 18 U.S.C. § 3583(h).  The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided."  *See id.* § 3583(b).  Defendant's underlying conviction was for uttering counterfeit obligations or securities in violation of 18 U.S.C. § 472, which is a class C felony.  Thus, pursuant to § 3583(b) and (h), Defendant faces a maximum term of supervised release of three years "less any term of imprisonment . . . imposed upon revocation of supervised release."  In light of the term of imprisonment that is recommended to be imposed upon this revocation, Defendant would be eligible for an additional term of supervised release of 1 year.  Based upon the factors described above, the Court finds that an investment of an additional year of supervised release is warranted.  Despite the findings herein, Defendant has shown in the past that has the ability to comply with conditions that are imposed by the Court, and the public would benefit from giving the Defendant an additional opportunity to do so.

## IV.  RECOMMENDATION

Accordingly, the Court **RECOMMENDS**, based on the violations found:

1. Revocation and imprisonment for a term of 24 months;

2. An additional term of supervised release of 1 year. For the reasons stated at the time of Defendant's original sentencing, the conditions of supervised release should be the same as those originally imposed by the Court's judgment dated September 15, 2010 (D.E. 58).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge VanTatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 30th day of January, 2012.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge