UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,               )
                                        )
        Plaintiff,                      )
                                        )        No. 6:10-CR-1-GFVT-HAI-2
v.                                      )
                                        )        RECOMMENDED DISPOSITION
CURTIS LEE JUSTICE,                     )
                                        )
        Defendant.                      )
                            ***   ***   ***   ***

The Court, on referral from District Judge Van Tatenhove (D.E. 91), considers reported violations of supervised release conditions by Defendant Curtis Lee Justice. On April 26, 2010, Defendant pled guilty to uttering counterfeit obligations or securities in violation of 18 U.S.C. § 472. D.E. 31. On September 9, 2010, District Judge Van Tatenhove sentenced Defendant to a term of imprisonment of twelve months and one day, and a two-year term of supervised release. D.E. 58. Defendant began his original supervised release term on June 24, 2011.

In December 2011, the United States Probation Office (USPO) issued a Supervised Release Violation Report charging Defendant with violations of the following conditions: (1) that he not use controlled substances (based on methamphetamine and cocaine use); (2) that he not commit another federal, state, or local crime (as the result of said drug use) (3) that he not commit another federal, state, or local crime (as the result of being arrested on new drug-related charges); (4) that he notify his probation officer of being arrested within seventy-two hours; and (5) that he answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer. During a final hearing on January 17, 2012, the Court found by a

preponderance of the evidence that the violations contained in the Supervised Release Violation Report occurred. D.E. 69.

As a result of this finding, the undersigned recommended revocation with imprisonment for a term of twenty-four months, followed by a term of supervised release of one year, under the same conditions imposed by the original Judgment. D.E. 72 at 10. On April 16, 2012, the District Judge adopted the undersigned's Recommended Disposition and found that both violations occurred as set forth in the Supervised Release Violation Report. D.E. 73 at 2. The District Judge revoked Defendant's supervised release and imposed a judgment in accordance with the recommendation of the undersigned. D.E. 74. Defendant began his reimposed supervised release term on October 25, 2013.

On May 7, 2014, the USPO submitted a 12A Report on Offender Under Supervision (D.E. 88) advising the Court that Defendant's urine tested positively for the presence of oxycodone on March 27, 2014. Because Defendant was gainfully employed, and verbally maintained a commitment to abstain from further use of illicit drugs, District Judge Van Tatenhove approved Officer Rains's request that no action be taken at that time. *Id*.

On August 20, 2014, the USPO submitted a 12C Petition for Warrant or Summons for Offender under Supervision, and District Judge Van Tatenhove issued a summons returnable on September 5, 2014, at 1:00 p.m. before the undersigned. D.E. 89. The USPO issued a Supervised Release Violation Report (the "Report") that same day.

First, per the Report, Violation One charges Defendant with allegedly violating Standard Condition No. 9 by associating with a person engaged in criminal activity. The conduct underlying this alleged violation effectively began on May 13, 2014, when Officer Rains inadvertently discovered, by attempting to contact Defendant through his father, that Defendant

possessed a cell phone. Defendant was not truthful about possessing a cell phone, made no indication that he already owned a phone when Officer Rains suggested that it would be easier to contact Defendant if he owned a cell phone, and did not admit to possessing such a phone until confronted with the above information. As a result of this deception, Officer Rains asked Defendant to conduct a search of said phone, and Defendant acquiesced by signing a release statement to that effect. Ultimately, the search revealed text messages which appeared to be between Defendant and his girlfriend. These texts discussed Defendant's girlfriend being sick from the use of drugs and potentially failing drug tests. On May 15, 2014, Officer Rains met Defendant at his residence to return the cell phone. At that time, Defendant acknowledged that his girlfriend was attending appointments at a suboxone clinic and had been an illicit drug user, and admitted to giving his girlfriend money to purchase illicit narcotics. Officer Rains advised Defendant at this time that his conditions of release required that he not associate with individuals involved in criminal activity, and admonished him for representing that his girlfriend was clean and sober when he knew her to be using drugs. Finally, Officer Rains instructed Defendant that his girlfriend must find a new residence. This is a Grade C supervised release violation.

Second, in relation to Violation One, Violation Two charges Defendant with allegedly violating Standard Condition No. 3, which requires Defendant to answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer. Per the Report, Defendant was not truthful with Officer Rains with regard to his girlfriend's substance use or abuse. Further, Officer Rains observed Defendant's girlfriend to be living with Defendant as late as July 31, 2014, in direct contravention of Officer Rains's instructions on the 15th of May. This is a Grade C supervised release violation.

Finally, Violation Three separately charges Defendant with allegedly violating Standard Condition No. 3. Per the Report, on July 3, 2014, Officer Rains unsuccessfully attempted to contact Defendant. Later that evening, when Defendant returned Officer Rains's phone call, Officer Rains inquired about Defendant's location that day. Defendant stated that he worked at his father's residence that morning, ran into a friend in a nearby store while on lunch break, and accompanied said friend to Berea to perform some masonry work for the remainder of the day. On July 21, 2014, Officer Rains followed up with Defendant about his whereabouts on July 3, 2014. Defendant confirmed his previous story, but was unable to provide the last name of the friend he worked with that day or the address of where the two had worked when asked. Further, when Officer Rains offered to accompany Defendant to his friend's residence to confirm the information provided, Defendant admitted that he had not been truthful with Officer Rains, and that he and his girlfriend had been out "riding around" on July 3, 2014. When Officer Rains inquired as to why Defendant would lie about something so trivial, Defendant replied "you know how I am." This is a Grade C supervised release violation.

On September 5, 2014, the Court conducted an initial appearance pursuant to Rule 32.1, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 94.[1] At the initial appearance, the United States did not seek detention, and the Court determined that release was appropriate per Rule 32.1(a)(6). *Id.* Defendant was advised that, pending his final revocation hearing in this matter on September 11, 2014, the terms of supervision previously imposed would remain in full force and effect. *Id.*

---

[1] Defendant failed to appear as directed by the summons at Docket Entry 92 at the scheduled 1:00 p.m. hearing. Upon oral motion of the United States, the undersigned issued an arrest warrant for Defendant for failure to appear as summoned. Defendant arrived at the courthouse at 1:45 p.m., the matter was recalled, and at the Government's request, the undersigned recalled the warrant.

At the final hearing on September 11, 2014, Douglas Benge appeared as counsel appointed pursuant to the Criminal Justice Act. D.E. 95. Defendant informed the Court that he had retained counsel, though said counsel was unavailable on that date and time. *Id*. The Court rescheduled the final hearing for September 18, 2014. *Id*. The United States moved for interim Detention, and Defendant argued for release. *Id*. Based on the heavy § 3143(a) defense burden, the Court found that Defendant failed to justify release and remanded Defendant to the custody of the United States Marshal. *Id*. This finding was based upon Defendant's misrepresentation to the Court concerning recent drug use. Specifically, at the time of his initial appearance, Defendant tested positive for hydrocodone, but informed the USPO that he had a prescription and had reported that prescription to Officer Rains by leaving a voicemail. As it turned out, the former was true, but the latter was not. Prior to the call of his final violation hearing, when confronted, Defendant admitted to the USPO that he had not left a message for Officer Rains about the prescription. This deception to the court resulted in detention pursuant to Rule 32.1(a)(6).

At the reconvened final hearing on September 18, 2014, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 97. Defendant advised the Court that he had not, in fact, retained counsel, and after a short colloquy, that he would be satisfied with continued representation by Douglas Benge. Defendant competently entered a knowing, voluntary, and intelligent stipulation to each of the three violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the Report.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. The underlying offense for which

Defendant was convicted was uttering counterfeit obligations or securities. *See* 18 U.S.C. § 472. Defendant's conviction is a Class C felony. *See* 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-439 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1, Defendant's admitted conduct would qualify as Grade C violations. Given Defendant's Criminal History Category of IV (the category at the time of the conviction in this District) and Grade C violations, Defendant's Guidelines Range, under the Revocation Table of Chapter 7, is 6 to 12 months.

The parties disputed the appropriate sentence. The United States asked for a top of the Guidelines Range term of twelve months of imprisonment. The United States argued that Defendant's history of noncompliance with conditions and deceptive behavior require a lengthy term of imprisonment. The United States pointed out the similarities between Defendant's underlying conviction and the current violations, all of which involve dishonesty, to suggest that, given Defendant's history, nothing less than a top of the Guidelines Range of imprisonment could be expected to have an effect on Defendant's behavior. The United States noted as a mitigating factor that Defendant has worked hard his entire life, but argued that a strong need for

deterrence of criminal conduct and to protect the public necessitated the requested sentence. The United States did not request a term of supervised release following imprisonment.

Defense counsel asked for a term of imprisonment of 30 days. He disagreed with the United States's sentiment that the underlying offense was similar to the current conduct at issue, arguing that counterfeiting is not the same as lying. He offered in mitigation that Defendant has remained employed, has been making child support payments, and that in a sense supervised release has been effective in that Defendant has abstained from illegal drug use since his first revocation. While acknowledging that no violation of a supervised release condition is insignificant, he argued that the current violations are about as minor as the Court would ever see. He acknowledged that Defendant knew his girlfriend was a drug addict, but noted that Defendant attempted to put her in treatment as soon as they moved in together. Finally, he agreed with the United States that no term of supervised release should be reimposed.

The Court notes that, should the Court recommend a term of imprisonment which deviates from the Guidelines Range as requested by Defendant, the Court would have to "'adequately explain the chosen sentence—including an explanation of *any deviation* from the Guidelines range.'" *United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). The Court would also be required to "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Id.* (quoting *Gall*, 552 U.S. at 50). Finally, the Court would have to state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

To determine an appropriate revocation term of imprisonment, the Court has evaluated the entire record, including the Supervised Release Violation Report and accompanying

documents, the Court's previous Recommended Disposition (D.E. 72), and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis. The Court has carefully weighed the nature and circumstances of the offense and Defendant's particular history and characteristics. After reviewing all of the above materials, the Court cannot discern any reason to depart downward from the Guidelines Range, or any reason to depart significantly upwards. Defendant's current and previous violations have many similarities. Though serious drug use is not present in the current context, the two years Defendant served upon his first revocation were intended, in part, to encourage Defendant to learn to be truthful while on release. That clearly did not happen.

The Court reminds Defendant that the Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Deception on the part of Defendant has been constant throughout his interactions with the USPO, even spilling directly into his interactions with the Court in this case. As such, Defendant's chronic dishonesty is by far the most significant factor driving the Court's recommendation.

Ultimately, the Court finds that imprisonment is warranted, and that a sentence at the top of the range described by the applicable Guidelines and Policy Statements is necessary to reflect the seriousness of the violation, and the gravity of the breach of the Court's trust. *See* 18 U.S.C. § 3553(c). The Court has considered the need for education, training, and treatment, and finds

that a sentence close to the Guidelines Range is the best way to avoid unwarranted disparities in sentencing among similarly situated Defendants. Therefore, the Court finds that a term of twelve months and one day imprisonment is sufficient, but not greater than necessary, to meet the statutory goals of sentencing at this stage for all the reasons described above. The Court departs slightly upward by recommending twelve months and one day, but only does so in order for Defendant to qualify for good time credit while incarcerated. In doing so, the Court hopes to provide Defendant with an opportunity to learn how to adjust his behavior.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's convictions, pursuant to 18 U.S.C. §§ 472 and 3583(h), Defendant may be placed on supervised release following revocation for a maximum of three years, less any term of imprisonment imposed upon revocation. Because Defendant received two years of imprisonment on the prior revocation, and because the Court is recommending that Defendant serve one year and a day of imprisonment on the present revocation, Defendant would not be eligible for a term of supervised release following his term of imprisonment should the District Judge accept this recommendation. *See United States v. Vera*, 542 F.3d 457, 462 (5th Cir. 2008) (noting that potential supervised release term is cumulative of incarceration imposed, including on previous revocations). Accordingly, the Court does not recommend that a term of supervised release be reimposed following his term of imprisonment.

Based on the foregoing, the Court **RECOMMENDS**:

1. Revocation with a term of incarceration of twelve months and one day; and

2. No term of supervised release to follow.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 23rd day of September, 2014.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge